NOT FOR  PUBLICATION                                                    [17,18]_____

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
ALBERTO ELLI,                          :        Civil Action No. 06-1240 (FLW)
                                       :
           Plaintiff,                  :
                                       :
           v.                          :
                                       :
GENMAB, INC. and LISA N.               :
DRAKEMAN,                              :
                                       :        **OPINION**
           Defendants.                 :
_____:

**WOLFSON, District Judge**:

        Presently before the Court are two motions filed by Defendants, Genmab Inc.,

("Genmab") and Lisa Drakeman ("Drakeman") relating to the Complaint of Plaintiff, Alberto

Elli ("Elli").   The first motion, filed May 3, 2006, is a Motion to Dismiss in Part and Otherwise

Stay the Proceedings Pending Arbitration; the second motion, filed May 12, 2006, is a Motion

for Sanctions pursuant to Rule 11. The dispute underlying these motions concerns an

employment agreement between Plaintiff and Genmab and Plaintiff's subsequent termination

from his position with Genmab.  For the reasons set forth below, the Court will stay the litigation

pending arbitration and will deny Defendants' Motion for Sanctions.


**I. Background**

        Defendant, Genmab Inc., is a Delaware Corporation with its principal place of business in

1

Princeton, New Jersey.  On May 16, 2005, Elli was offered a position as Senior Vice President and Chief Financial Officer ("CFO") with Genmab and its Danish parent company, Genmab A/S. The terms of hire were initially set forth in a letter of employment dated May 16, 2005. Certification of Alberto Elli ("Elli Cert."), ex. F.   Elli accepted this offer and entered into an employment agreement dated May 2005 that was captioned "Service Agreement between Genmab A/S and Genmab Inc., on the one hand and Alberto Elli on the other hand."  Elli Cert., ex. A.  Elli initialed or signed each of the 10 pages of the agreement.  In addition, Elli asked an attorney, Kevin Ryan, Esq. ("Ryan"), to review the employment agreement.  As a result, Ryan suggested various modifications to the agreement which he set forth in a letter dated May 24, 2005.  Declaration of Lisa N. Drakeman ("Drakeman Decl."), ex. B.

Pursuant to the employment agreement, Elli was to become CFO of Genmab and dedicate 10 percent of his time to Genmab A/S and 90 percent of his time to Genmab, Inc.  Elli Cert., ex. A., art. 1.  Moreover, the agreement noted that if Elli was terminated without cause he would be entitled to various benefits including 24 months of salary.  Id., art. 11.  However, if Elli was terminated for cause, Defendants were required to provide written notice setting forth the facts constituting cause and Plaintiff was to have 45 days afer receipt of such notice to cure the reason constituting cause.  Id.  During this 45 day period, the employment agreement was to continue and Plaintiff would receive his full salary, expenses and benefits pursuant to the agreement.  Id. In addition, the employment contained a provision captioned "Governing law and arbitration" that provided:

> This Service Agreement shall in all matters be governed by and construed in accordance with the laws of the Kingdom of Denmark. Any dispute or claim out of or in connection with this Service

Agreement shall be resolved as follows: (1) for a period of 45 days after a dispute arises the parties shall negotiated in good faith in an effort to resolve the dispute, and (2) if the dispute has not been resolved at the close of such 45 days-period, <u>the matter shall be settled by arbitration in accordance with the procedural rules of the Danish Institute of Arbitration (Copenhagen Arbitration)</u>.  The arbitration tribunal shall be composed of three members, of whom each party appoints one while the Danish Institute of Arbitration appoints the third member, who shall be Chairman of the arbitration tribunal...<u>The arbitration tribunal shall have its seat in Copenhagen and the language of the proceedings shall be in Danish</u>.

<u>Id</u>., art. 13 (emphasis added).

On June 1, 2005, Plaintiff commenced employment as the CFO of Genmab. Pl's Compl. at ¶ 19.  Thereafter, on June 30, 2005, Plaintiff received a letter signed by Drakeman on behalf of Genmab A/S and Genmab, Inc.,  suspending him immediately from his job as CFO.  <u>Id</u>. at ¶ 24; <u>see</u> Pl's Compl., ex. C.  Indeed, Drakeman's letter explained that Elli's suspension was taken "pursuant to Article 11 of the Service Agreement. . . pending a determination whether "cause" exists for termination of...employment."  Pl's Compl, ex. C.

Following the suspension, Plaintiff's counsel wrote to Defendants on July 5, 2005 and demanded compliance with the employment agreement.  Certification of Jarrod C. Cofranceso Esq. ("Cofranesco Cert."), ex. A.  Plaintiff did not receive a response.  Subsequently, on July 21, 2005, Plaintiff again inquired about the circumstances surrounding his suspension.  <u>Id</u>., ex. B. On July 25, 2005, Ryan received a letter from Genmab's legal counsel asserting that Elli was suspended for an alleged misrepresentation in his resume; specifically, Genmab alleged that Elli represented that his "education [was] comparable to an MBA and CPA in the USA."  <u>Id</u>., ex. C. On July 27, 2005,  Ryan again demanded that Genmab comply with the terms of the employment

agreement and requested copes of documents on which Elli was alleged to have misrepresented his qualifications. Id., ex. D.  Plaintiff never received such documentation.

Thereafter on August 4, 2005, Drakemen sent Elli a later informing him that he was terminated for cause.  Id., ex. F.   Specifically, Drakeman's letter asserted that "[i]n the materials you submitted to the company as part of your application for employment, you clearly represented that your education and professional qualifications were. . .comparable to that of a . . . CPA in the USA" and that "such qualification was paramount in the Company's decision to make you an offer of employment."  Id.  Moreover, the letter cited insubordination as an additional basis for terminating Elli with cause.  Id.

By letter dated September 8, 2005, Elli demanded information and an opportunity to cure as well as compliance with the Service Agreement. Cofrancesco Cert., ex. G.  Plaintiff received no response.  On September 26, 2005, Plaintiff received a letter from Drakeman informing him that the Board voted to terminate his employment effective September 19, 2005.   Drakeman Decl., ex. A.  On February 6, 2006, Plaintiff filed a Complaint in the New Jersey Superior Court, Mercer County alleging three counts of breach of contract, two counts of tortious interference with contract and requesting declaratory relief finding the forum selection clause unenforceable. On March 17, 2006, Defendant removed the case to the District of New Jersey.  On May 3, 2006, Defendants filed the instant Motion to Dismiss and Stay Pending Arbitration.  Subsequently, on May 12, 2006, Defendants filed a Motion for Sanctions pursuant to Rule 11.

**II. Discussion**

**A. Motion to Dismiss and Stay Proceedings Pending Arbitration**

4

Defendants filed the instant motion asking this Court to dismiss Plaintiff's claims for tortious interference and stay the remaining claims pursuant to a valid arbitration clause contained in the employment agreement.  Plaintiff opposes this motion; specifically, Plaintiff contends that the forum selection provision of the arbitration clause, which requires arbitration in Denmark and in the Danish language, is unenforceable.  Indeed, Plaintiff admits that he is not seeking to avoid arbitration, rather Plaintiff is seeking, amongst other relief, a declaratory judgment that the forum selection clause is unenforceable.  Pl's Br. at 2.  Thus, the initial question for this Court is whether the forum selection clause is, indeed, valid and enforceable, or whether it should be voided[1].

Forum selection clauses are entitled to great weight and are presumptively valid. Wall Street Aubrey Golf, LLC v. Aubrey, 2006 WL 1525515 (3d Cir. 2006); see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir.1983) (citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-11, (1972)). The enforceability of forum selection clauses in admiralty, diversity and federal question cases is governed by the doctrine of M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972); see also K.K.D. Imports Inc., v. Karl Heinz Dietrich GmbH & Co. International Spedition, 36 F.Supp. 2d 200 (S.D.N.Yl 1999).  In Bremen, the Supreme Court held that forum selection clauses must be strictly enforced, unless the enforcement would be "unreasonable and unjust," or unless the resisting party could show countervailing or compelling reasons why it should not be enforced.  Id. at 15.  Indeed, the

_____

[1]The Court notes that it is well-established that unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agree to arbitrate is to be decided by the court, not the arbitrator.  See AT&T Technologies, Inc., v. Communication Workers of America, 475 U.S. 643 (1986).

Bremen Court noted that absent a showing that adjudication "in the contractual forum will be so gravely difficult and inconvenient that [the resister] will for all practical purposes be deprived of his day in court," there is no basis for refusing to hold a party to their contractual choice of forum.  Id. at 18.  Under Bremen, a forum selection clause will be invalidated only if the resisting party can show (1) the clause was invalid for such reasons as fraud or overreaching, or (2) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, or (3) that enforcement of the clause would be so gravely difficult and inconvenient as to be unreasonable and unjust and that it would deprive the party of its day in court. Id. at 10, 15, 18; see also Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1297-98 (3d Cir.1996); Hoffer v. InfoSpace.com, Inc., 102 F.Supp.2d 556 (D.N.J.,2000).  In Scherk v. Alberto-Culver Co., the Supreme Court upheld the application of Bremen to an arbitration agreement with a forum selection clause providing for mandatory arbitration of all disputes in Paris, France. 417 U.S. 506, 519-520 (1974).  The Scherk Court enforced the forum selection clause holding that the parties' agreement to arbitrate any dispute arising out of their international commercial transaction was to be respected and enforced by the federal courts in accord with the explicit provisions of the Arbitration Act.  Id. at 519-520.

In the instant matter, Plaintiff does not allege that the forum selection clause was a result of fraud or overreaching, however Plaintiff  does contend that the clause requiring arbitration in Denmark and in the Danish language is "unreasonable, would seriously inconvenience the parties for trial, and violates the public policy of New Jersey."  Pl. Opp. Br. at 9.  Thus, this Court will focus on the second and third prongs of the Bremen test.

Initially, Plaintiff argues that the forum selection clause is unreasonable and he cites the

6

Third Circuit's decision in Copperweld Steel Company v. Demag-Mannesmann-Bohler, 578 F.2d 953 (3d Cir. 1978), in support of his contentions.  In Copperweld, the Third Circuit relied on the following facts to find that a forum selection clause requiring litigation in Germany was unreasonable: (1) the facility that was the subject of the action was located in Ohio and was likely to become the object of an inspection during trial; (2) the facility was fabricated by a Pennsylvania contractor; (3) the records concerning operation of the plant were in the United States; (4) Plaintiff's personnel who operated the plant were in the United States; (5) all of the personnel who negotiated this contract were in the United States.; (6) certain of Defendant's personnel were in the United States and Defendant maintained an office in Pittsburgh; (7) all of the activities in connection with the contract took place in the English language; (8) all of the witnesses spoke English; (9) conducting litigation in Germany would have required translation. For these reasons, the Copperweld court held that enforcement of a forum selection clause requiring disputes to be brought before a German Court would be unreasonable.  Id. at 966.

In the instant matter, Elli argues that the facts in this case are nearly identical to those in Copperweld.  Indeed, Elli contends that Plaintiff's agreement with Genmab, Inc., a Delaware Corporation with its principle place of business in Princeton, New Jersey, accounted for at least 90 percent of the subject matter of the employment agreement.  Moreover, Elli notes that all records and documentation pertaining to his employment are stored in New Jersey and that all of the personnel who negotiated his employment agreement are located in New Jersey.  Further, Elli argues that all the negotiations surrounding his employment took place in English and that all the potential witnesses speak the English language.  Finally, Elli contends that he would be

compelled to pay an advanced arbitration fee of $50,000 to initiate arbitration in Denmark[2]. For these reasons, Elli argues that this Court should find that the forum selection clause is unreasonable and unenforceable. The Court does not agree.

Initially, the Court notes that the forum selection clause in <u>Copperweld</u> did not concern an agreement to arbitrate, but an agreement to litigate in another forum.  Although this is not dispositive, it does highlight a substantial postural difference between the cases and underscores the fact that this matter is governed by the Federal Arbitration Act, 9 U.S.C.A.  § 1 et seq., and its underlying policies[3].  Moreover, and more importantly, unlike <u>Copperweld</u>, the subject matter of Plaintiff's suit does bear a substantial relationship to Denmark.  For example, Elli's employment agreement is a contract with both Genmab Inc., the American corporation, and Genmab A/S, the

---

[2]Although Plaintiff suggests this fact in his brief, the Court notes that Plaintiff has not provided a specific citation supporting the allegation that he would have to pay an advance fee of $50,000 to participate in Arbitration in Denmark.  Indeed, upon my own review of the information pertaining to Danish arbitration, the Rules provide that a request for arbitration must be accompanied by payment of DKK 7,500/EUR 1,000, an amount much lower than $50,000. Thus, this Court is without any explanation by the Plaintiff or the certification of an expert to substantiate the requirement of a $50,000 advance fee.  Moreover, Plaintiff has not explained the impact of this fee including whether the alleged initial outlay of money would be repaid to him, split by the parties following arbitration or otherwise returned to him.

[3] It is well-established that the purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 24(1991). The FAA broadly provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . .shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, the FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. <u>See</u> 9 U.S.C. §§ 3 and 4. The Supreme Court has read these provisions to "manifest a 'liberal federal policy favoring arbitration agreements.' " <u>Gilmer</u>, 500 U.S. at 25 (<u>quoting</u> <u>Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)).

Danish parent corporation.  Indeed, Elli devoted 10 percent of his time to, and received 10 percent of his salary from, Genmab A/S.  Further, the employment agreement required Elli to register with the "Danish Commerce and Companies Agency as the Company's Chief Financial Officer."  Elli Cert., ex. A, art. 1.  In addition, Elli's employment agreement included a provision pursuant to which he would be able to purchase 100,000 shares in Genmab A/S subject to the approval of the Genmab A/S Board of Directors.  Id., art. 3.  In addition, Elli received holiday entitlements as provided in the Danish Holiday Act in addition to American holidays.  Id., art. 7. For these reasons, the Court finds that forum selection clause requiring arbitration in Denmark is not so unreasonable as to be unenforceable.

Plaintiff additionally argues that enforcement of the forum selection clause would be inconvenient.  Specifically, Plaintiff argues that if compelled to arbitrate in Denmark, the language would be a substantial barrier to his ability to participate in the proceedings. Additionally, Plaintiff argues that the $50,000 advance fee for arbitration is a significant financial hurdle.  Undoubtedly, arbitrating the parties' dispute in Denmark will be inconvenient for Plaintiff, but that mere fact does not end the inquiry.

Under Bremen, inconvenience is insufficient to avoid a forum selection clause absent proof that "trial in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in Court."  Id. at 1; see Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C., 21 F.Supp. 2d 465, 471 (D.N.J. 1998).  Further, the Bremen Court underscored this rule by observing that, "where it can be said with reasonable assurance that at the time they entered the contract, the parties. . . contemplated the claimed inconvenience, it is difficult to see why any such claim of

9

inconvenience should be heard to render the forum clause unenforceable." Id. at 16.  Indeed,

numerous courts have refused to revoke forum selection clauses on the basis of inconvenience.

For example, in Dayhoff v. H.J.Heinz Co., the Third Circuit enforced a forum selection clause

requiring arbitration in Milan, Italy. 86 F.3d 1287, 1298 (3d Cir. 1996).  There, the court

determined that:

> [t]he parties to the Agreements were sophisticated business people and
> there is no indication that Plaintiff was not aware, or could not have
> made itself aware, of the consequences that would result from...the
> forum selection clauses including whether the chosen forum was
> adequate and convenient.  Simply because Plaintiff is unhappy, in
> retrospect, about the forum it designated is insufficient to warrant a
> finding that the clauses are unenforceable.

Id.

Similarly, in Pauly v. Biotronik, the court upheld a forum selection clause requiring

arbitration by the International Chamber of Commerce in Paris and mandating that the

proceedings take place in Switzerland under German substantive and procedural law. 738

F.Supp. 1332, 1335 (D.Or. 1990).  Indeed, the Pauly court held that Plaintiff's suggestion that

arbitration in Europe would be an "extreme inconvenience" because he did not speak German

was not sufficient to set aside the forum selection clause.  Id.  Finally, in Intermetals Corporation

v. Hanover International, the court upheld a forum selection clause requiring litigation in Austria

despite the additional expense or inconvenience of having to litigate in such a distant forum.  188

F.Supp. 2d 454, 460 (D.N.J. 2001); see also Danka Funding, 21 F.Supp. 2d at 471("This Court

understands that defendant will incur more costs as a result of defending suit in New Jersey, but

defendant has not submitted any evidence that it will be effectively deprived of its day in

court.").

Initially, as discussed above, Plaintiff initialed or signed every page of the employment agreement including the page containing the arbitration and forum selection clause. Moreover, Plaintiff had retained an attorney to review the agreement. Plaintiff's attorney made requests to change various provisions in the agreement, but nowhere did he oppose the arbitration provision. Thus, there is no indication that Plaintiff was not aware of or could not have made himself aware of the consequences of his bargain including the arbitration and forum selection provisions. Further, in light of the above precedent including the court's holding in Pauly, I find that Plaintiff's unfamiliarity with Danish is not sufficient to revoke the forum selection clause. Finally, although I am sympathetic to Plaintiff's argument that the alleged expense of initiating arbitration in Denmark is significant, on the basis of the spartan evidence presented on Danish arbitration[4], the evidence of Plaintiff's bargained-for arbitration, and, in light of the Court's holding in Intermetals, I find that enforcement of the forum selection clause would not deprive Plaintiff of his "day in court."

Finally, Plaintiff argues that enforcement of the forum selection clause would violate the public policy of the state of New Jersey. Specifically, Plaintiff contends that the forum selection clause violates "New Jersey's long standing public policy that litigants are to have unfettered access to the courts." Pl's Br. at 20. The Court does not agree.

It is well-established that both Federal and New Jersey law and public policy favor the arbitration of disputes. Indeed, the Federal Arbitration Act ("FAA") was enacted to "revers[e]

_____

[4]Indeed, the Court notes that not only has Plaintiff failed to provide a citation to substantiate the $50,000 mandatory advance fee, but Plaintiff does not suggest that he is unable to pay the $50,000 fee; thus, the Court cannot find that the expense of arbitration would deprive Plaintiff of his day in court.

11

centuries of judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts."  Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1113 (3d Cir.1993).  In addition, the State of New Jersey has a strong public policy favoring arbitration. N.J. Stat. Ann. 2A:24-1 to -11 ("A provision in a written contract to settle by arbitration a controversy that may arise therefrom or a refusal to perform the whole or a part thereof or a written agreement to submit, pursuant to section 2A:24-2 of this title, any existing controversy to arbitration, whether the controversy arise out of contract or otherwise, shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract."); see also e.g., Martindale v. Sandvik, Inc., 173 N.J. 76, 84-85, 800 A.2d 872 (2002) ("The New Jersey Legislature codified its endorsement of arbitration agreements in N.J.S.A. 2A:24-1 to -11. Moreover, New Jersey courts also have favored arbitration as a means of resolving disputes ... Thus, in deciding whether to enforce the arbitration provision in this application for employment, we rely on the well-recognized national policy and the established State interest in favoring arbitration.") (citations omitted).  Moreover, New Jersey has a general policy of upholding the validity of forum-selection clauses. Arentowicz v. Cap Gemini Ernst & Young U.S. LLC, 2004 WL 1834600 at *4 (D.N.J. 2004); Cadapult Graphic Systems, Inc. v. Tektronix, Inc., 98 F.Supp.2d 560, 568 (D.N.J.2000); Caspi v. Microsoft Network, L.L.C., 323 N.J.Super. 118, 123 (N.J. Super.App. Div.1999)( holding that "as a general matter, enforcement of forum selection clauses is not contrary to public policy"). For these reasons, the Court finds that the enforcement of the forum selection clause contained in the employment agreement will not violate the public policy of New Jersey.

As a result of deciding that enforcement of the forum selection clause in the instant

dispute is not unreasonable, this Court must now determine whether to dismiss Plaintiff's claims

for tortious interference and/or stay the litigation pending the outcome of arbitration. The FAA

guarantees that any agreement to settle a dispute by arbitration in a "contract evidencing a

transaction involving commerce. . .shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[5]  Moreover,

the FAA authorizes district courts to stay litigation and compel arbitration in certain

circumstances.  In particular, a court shall "stay the court action pending arbitration once it is

satisfied that the issue is arbitrable under the agreement." 9 U.S.C. § 3.  For arbitrable issues,

section 3 indicates that the stay is mandatory.  However, when confronted with litigants

advancing both arbitrable and nonarbitrable claims, courts have discretion to stay proceedings of

nonarbitrable claims. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 225 (1985).

Generally, when the arbitrable claims predominate or where the arbitrable claims will have some

effect on non-arbitrable claims, a court will stay litigation of the non-arbitrable claims pending

the outcome of arbitration. Central Jersey Freightliner Inc. v. Freightliner Corp., 987 F.Supp.

289, 300-301 (D.N.J. 1997); see also Allied Fire & Safety Equip. Co., v. Dick Enter., 886

F.Supp. 491, 498 (E.D. Pa. 1995); Mutual Benefit Life Ins. Co v. Zimmerman, 783 F.Supp. 853,

876 (D.N.J.).  However, it is well-established that given the liberal federal policy favoring

arbitration, any doubts concerning the scope of arbitrable issues should be resolved in favor of

---

[5]To be a "transaction involving commerce," the contract need only have "the slightest
nexus" to interstate commerce. Crawford v. West Jersey Health Systems, 847 F.Supp. 1232,
1240 (D.N.J.1994). Indeed, the Supreme Court has held that employment contracts, except for
those covering workers engaged in transportation, are covered by the FAA. Circuit City Stores,
Inc. v. Adams, 532 U.S. 105 (2001); E.E.O.C. v. Waffle House, Inc., 534 U.S. 279 (2002).
Therefore, the FAA applies to the arbitration clause in the employment agreement.

arbitration. <u>Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24-25 (1983).

Therefore, prior to enforcing an arbitration agreement, a court must engage in a limited review to

determine (1) whether there is a valid agreement to arbitrate, and (2) whether the specific dispute

falls within the substantive scope of that agreement. <u>Salvadori v. Option One Mortgage Corp.</u>,

420 F.Supp.2d 349, 356 (D.N.J.2006) (citing <u>Mitsubishi Motors Corp. v. Soler</u>

<u>Chrysler-Plymouth, Inc.</u>, 473 U.S. 614 at 626-28 (1985)).

      In the instant matter, the Plaintiff and Genmab executed and signed an employment

contract that included the following agreement to arbitrate:

> <u>Governing law and arbitration</u>: This Service Agreement shall in all
> matters be governed by and construed in accordance with the laws of the
> Kingdom of Denmark. Any dispute or claim out of or in connection with
> this Service Agreement shall be resolved as follows: (1) for a period of
> 45 days after a dispute arises the parties shall negotiated in good faith in
> an effort to resolve the dispute, and (2) if the dispute has not been
> resolved at the close of such 45 days-period, the matter shall be settled by
> arbitration in accordance with the procedural rules of the Danish Institute
> of Arbitration (Copenhagen Arbitration).

Pl's Compl., Ex. B, Art. 13.

      In addition, as noted above, Plaintiff signed or initialed each page of the agreement

including the page that contained the arbitration clause.  Moreover, the arbitration provision

covers "[a]ny dispute or claim out of or in connection with this Service Agreement."   <u>Id</u>.

Therefore, pursuant to the two-prong analysis set forth by the U.S. Supreme Court in <u>Mitsubishi</u>

<u>Motors</u>, I find that there is a valid arbitration agreement and that Plaintiff's claims for breach of

contract and declaratory relief all arise out of or in connection with the employment agreement

and are therefore subject to arbitration.  Moreover, pursuant to the court's analysis in <u>Central</u>

<u>Jersey Freightliner</u>, I find that Plaintiff's claims for tortious interference are so factually intertwined with the arbitrable claims that, at this juncture, I will stay these claims and administratively terminate this matter pending the completion of arbitration.  987 F.Supp. at 300-301 ("Given the factual intertwining of plaintiff's arbitrable and non-arbitrable claims, the Court, in its discretion, will stay litigation of the non-arbitrable claims pending arbitration."); <u>see</u> FAA, 9 U.S.C. § 3 (authorizing court to stay proceedings pending arbitration where any issue in suit is referable to arbitration); <u>Optopics</u>, 947 F.Supp. at 824; <u>Allied Fire & Safety Equip. Co. v.</u>, 886 F.Supp. at 498 (E.D.Pa.1995) (holding that court has the discretion to stay proceedings pending arbitration where arbitrable claims predominate or where arbitrable claims will have some effect on non-arbitrable claims); <u>Mutual Benefit Life Ins. Co.</u>, 783 F.Supp. at 876 (D.N.J.) ("The decision to stay litigation of non-arbitrable claims pending the outcome of arbitration is one left to the district court. . .as a matter of its discretion to control its docket."), aff'd, 970 F.2d 899 (3d Cir.1992).

## B. Rule 11 Sanctions

In addition to filing the above motion, Defendants filed a Motion for Sanctions pursuant to Fed. R. Civ. P. 11 ("Rule 11").  Specifically, Defendants argue that Plaintiff's lawsuit is frivolous.  Rule 11 allows for "the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." <u>Spring Creek Holding Co., Inc. v. Keith</u>, 2006 WL 2715148 (D.N.J. 2006) (quoting <u>Warren v. Guelker</u>, 29 F.3d 1386, 1388 (9th Cir.1994)).  Rule 11 sanctions are based on "an objective standard of reasonableness under the circumstances." <u>Martin v. Brown</u>, 63 F.3d 1252, 1264 (3d Cir.1995)

(quoting <u>Landon v. Hunt</u>, 938 F.2d 450, 453 n. 3 (3d Cir.1991)).  The imposition of Rule 11

sanctions is reserved for only exceptional circumstances in which the claim or motion is patently

unmeritorious or frivolous.  <u>Ford Motor Co. v. Summit Motor Prods.</u>, 930 F.2d 277, 289 (3d

Cir.1991) (citation omitted).  Therefore, in considering a motion to impose sanctions under Rule

11, the Court must determine that (1) the claims are objectively frivolous, and (2) the person who

signed the pleadings or other papers should have been aware that they were frivolous. <u>Baker v.</u>

<u>Alderman</u>, 158 F.3d 516, 524 (11th Cir.1998).

  In the instant matter, Plaintiff contends that enforcement of the forum selection clause

requiring arbitration in Denmark and in the Danish language was unenforceable because it was

unreasonable, inconvenient and violated the public policy of New Jersey.  Although, as discussed

above, this Court does not agree with Plaintiff's arguments, I cannot find that Plaintiff's

allegations were patently unmeritorious or frivolous.  Indeed, Plaintiff's papers relied upon legal

support and precedent in support of his contentions that the arbitration clause was unenforceable.

Because the forum selection clause was subject to argument and differing legal interpretations,

this Court simply did not find that Plaintiff had met the high standard needed to revoke this

clause.  Rule 11 sanctions are not warranted.


**III. Conclusion**

  For the reasons stated herein, Defendants' Motion to Dismiss and Motion for Sanctions

are DENIED.  Additionally, the Court will administratively terminate the case pending the

outcome of arbitration.  An appropriate Order will follow.

Dated: October 13, 2006

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge